UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AWGI, L.L.C.; Atlas Logistics, Inc.; and
Atlas Van Lines, Inc.

    Plaintiffs,

v.                                            Case No. 17-12131

Atlas Trucking Company, L.L.C.; Atlas       Sean F. Cox
Logistics, L.L.C.; and Eaton Steel Bar        United States District Court Judge
Company, Inc.,

    Defendants.
_____/

**OPINION AND ORDER REGARDING PLAINTIFFS' MOTION FOR RECONSIDERATION**

This matter is currently before the Court on Plaintiffs' Motion for Reconsideration of the Court's March 25, 2019 Opinion and Order on the parties' cross-motions for summary judgment. Because the Court concludes that oral argument will not aid the decisional process, the Court will decide the motion on the parties' briefing. Local Rule 7.1(f)(2).

The Court will grant Plaintiffs' motion for reconsideration to the extent that it will reinstate Plaintiffs' trademark infringement claims (Counts I through IV) and one counterfeiting claim (Count VI) against Atlas Trucking Company, Defendant Logistics, and Eaton Steel. The Court concludes that there is a genuine issue of material fact as to whether Defendants' use of "Atlas Trucking" causes a likelihood of confusion with Plaintiffs' "Atlas" marks, and that there is a genuine issue of material fact as to which party has priority to the mark "Atlas Logistics." The Court will also set a final pre-trial conference for **August 5, 2019 at 10:00 a.m.**

1

## BACKGROUND

This is a trademark case about the use of a stylized "A" and the terms "Atlas," "Atlas Logistics," and "Atlas - - the Agent's Van Line." The plaintiffs are Atlas Van Lines (a household moving company), Atlas Logistics, Inc. (a logistics management service) ("Plaintiff Logistics"), and AGWI, L.L.C. (the holding company for Van Lines and Plaintiff Logistics). The defendants are Eaton Steel Bar Company (a steel manufacturer) and its affiliated trucking and logistics companies, Atlas Trucking Company, L.L.C., and Atlas Logistics, L.L.C. ("Defendant Logistics").

Plaintiffs alleged four counts of trademark infringement under the Lanham Act, two counts of trademark counterfeiting under the Lanham Act, and one count of common law unfair competition. Defendant Logistics counterclaimed against Plaintiff Logistics and AWGI for one count of unfair competition and false designation of origin under the Lanham Act, and one count of common law unfair competition. Defendant Logistics also sought a declaratory injunction, pursuant to § 1119 of the Lanham Act, stating that Plaintiffs' trademark in "Atlas Logistics" was improperly registered and directing the Commission of Patents and Trademarks to cancel it.

Both sides moved for summary judgment. On March 25, 2019, the Court issued an Opinion and Order, wherein it granted summary judgment in favor of Defendants on Plaintiffs' claims, dismissed Defendants' common law unfair competition counterclaim, and concluded that there was a genuine issue of material fact underlying Defendants' Lanham Act counterclaims. (ECF No. 90).

As to Plaintiffs' trademark infringement claims, the Court applied the eight *Frisch* factors, and concluded

> Although some of the above factors favor a finding of a likelihood of confusion, the Court concludes that there is no likelihood of confusion because (1) "Atlas" is a weak mark, (2) Plaintiffs and Defendants provided different services to different customer bases, (3) there is only one documented instance of actual consumer

confusion after years of simultaneous use by Plaintiffs and Defendants, and (4) the parties' customers are sophisticated and tend to exercise great care in making decisions.

Of the eight *Frisch* factors, the Court found that four favored a finding of no likelihood of confusion, two favored a finding of a likelihood of confusion, and two favored neither. The Court concluded that this balance did not establish a likelihood of confusion.

The Court also concluded that the dismissal of Plaintiffs' trademark infringement claims necessitated the dismissal of their corresponding counterfeiting claims.

Now, Plaintiffs have filed a motion for reconsideration of the Court's March 25, 2019 Opinion and Order. (ECF No. 96). Defendants responded. (ECF No. 100). After Defendants' response, the Court concluded that supplemental briefing was needed on the following issue:

> Given that the parties conceded that their common usage of "Atlas Logistics" causes a likelihood of confusion, does the Court's conclusion that there is a fact issue as to who has priority to the "Atlas Logistics" mark (ECF No. 90, PageID 3769-3770) require the survival of not only Defendants' Lanham Act Counterclaims, but also Plaintiffs' Count II?

(ECF No. 103). Both sides filed supplemental briefing.

## ANALYSIS

**I.    Standard**

Motions for reconsideration are governed by Local Rule 7.1(h)(3), which provides:

> (3) Grounds. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

A motion for reconsideration does not afford the movant an opportunity to present the same

3

issues that have been already ruled on by the Court, either expressly or by reasonable implication. Nor does a motion for reconsideration afford the movant an opportunity to make new arguments that could have been, but were not, raised before the Court issued its ruling.

Again, in order to grant a motion for reconsideration, Plaintiffs must demonstrate a palpable defect by which the Court has been misled **and** must also show that correcting the defect will result in a different disposition of the case.

## II. The Issue Raised in the Court's Supplemental Briefing Order

The Court will first address the issue that it identified in its order for supplemental briefing, because that issue, alone, requires a different disposition of this case. At summary judgment, the parties conceded that their common usage of "Atlas Logistics" resulted in a likelihood of confusion. Thus, Plaintiffs' infringement claims related to "Atlas Logistics" turn on who has priority to that mark. Among other things, Plaintiffs argued that, by virtue of tacking, they had priority. The Court concluded that there was a genuine issue of material fact as to whether an ordinary consumer would consider "Atlas Logistics" to be the legal equivalent of Plaintiffs' "Atlas" mark and that the jury was the appropriate decision-maker for that issue.

In their responses to the Court's order, the parties appear to agree that the Court's conclusion requires the resurrection of at least one of Plaintiffs' trademark infringement claims. However, Defendants state that, "it would be the 'Atlas' mark (Count I), if any, that would survive." (ECF No. 105, PageID 3936). The Court agrees. Because Plaintiffs did not present any evidence that it used the mark "Atlas Logisitics" before Defendants did, any priority rights that they have to "Atlas Logistics" are derived from their rights in their decades-old "Atlas" mark. Thus, if the jury concludes that Plaintiffs can tack the phrase "Atlas Logistics" to the "Atlas" mark, Defendants use

4

of "Atlas Logistics" will have infringed the "Atlas" mark (Reg No. 3,718,117), not the "Atlas Logistics" mark (Reg. No. 4,737,616). Accordingly, for this reason, the Court will reinstate Plaintiff's Count I, rather than Count II.

In Defendants' response to the Court's order, they ask the Court to "consider the equitable estoppel argument that Atlas Logistics, LLC raised in its Summary Judgment papers to preclude post-complaint damages and injunctive relief." (ECF No. 105, PageID 3936). Putting aside the fact that this request violates the Court's clear directive that the parties address "only the precise issue outlined" in its order, the Court concludes that Defendants are not entitled to equitable estoppel.

At best, Defendants' equitable estoppel argument at summary judgment was an undeveloped afterthought. Here is the entire portion of their summary judgment brief that Defendants devote specifically to equitable estoppel:

> As for estoppel, ATL must show that it was prejudiced due to reliance on a misrepresentation by the mark owner. *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*, 614 F. Supp. 2d 793, 813 (E.D. Mich. 2009) (citing *Scholle Corp. v. Blackhawk Molding Co. Inc.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998). Even misleading silence or inaction can serve as a basis for estoppel. *Scholle Corp.*, 133 F.3d at 1473.

(ECF No. 71, PageID 2999-3000). After these two sentences, Defendants spent most of the next four pages discussing their laches argument, (ECF No. 71, PageID 3000-3003), before again waving in the direction of equitable estoppel:

> The years of silence after AWGI's first letter led ATL to believe that AWGI was satisfied with ATL's reply. [Ex. 6.] ATL continued to use the "Atlas Trucking" and "Atlas Logistics" marks in reliance on AWGI's continued inaction.

(ECF No. 71, PageID 33). In Defendants' reply brief, the equitable estoppel argument was again reduced to being a tag-a-long to the laches argument, with no independent articulation of its own merits.

5

Perhaps if Defendants had properly articulated the standard for equitable estoppel, they could have sufficiently developed an argument in the four sentences they chose to devote to it. But even there they miss the mark. In a trademark infringement suit, a defendant asserting equitable estoppel must prove "(1) misleading conduct that leads the defendant to believe that the plaintiff will not bring an infringement suit; (2) reliance on the misleading conduct by the defendant; and, (3) material prejudice suffered by the defendant as a result of the defendant's reliance." *Volkswagen AG v. Dorling Kindersley Pub., Inc.*, 614 F.Supp.2d 793, 813 (E.D. Mich. 2009) (citing *Scholle Corp. v. Blackhawk Molding Co. Inc*., 133 F.3d 1469, 1471 (Fed. Cir. 1998)). However, for silence to constitute misleading conduct, as Defendants argue is true here, "some evidence must exist to justify an inference that the silence is sufficiently misleading to amount to 'bad faith.'" *TWM Mfg. Co., Inc. v. Dura Corp*., 592 F.2d 346, 350 (6th Cir. 1979).

Here, Defendants offer no explanation as to how Plaintiffs' silence amounted to bad faith. Seemingly, the Defendants argue that, because the Court previously found that Defendants were entitled to laches, they must also be entitled to equitable estoppel, despite the fact these two legal principles are entirely distinct. *Compare Volkswagen AG*, 614 F.Supp.2d at 813 (listing the elements of equitable estoppel) with *Kehoe Componenet Sales, Inc. v. Best Lighting Products, Inc*., 305 F.3d 397, 408 (6th Cir. 2015) (listing the elements of laches). In the Court's view, Plaintiffs' lack of diligence in asserting their claims does not amount to bad faith. Thus, Defendants are not entitled to equitable estoppel, and the Court will reinstate Count I of Plaintiffs' Complaint.

### III. Issues Raised in Plaintiffs' Motion for Reconsideration

Plaintiffs' motion for reconsideration offers independent reasons to revive some of Plaintiffs'

other Lanham Act claims. In their motion for reconsideration, Plaintiffs argue that the Court erred in its application of the likelihood-of-confusion factors and the doctrine of laches. As to the likelihood-of-confusion factors, Plaintiffs argue that Defendants misled the Court into concluding that "Atlas" is a weak mark, and that the Court improperly dismissed their evidence of actual confusion. As to laches, Plaintiffs argue that the Court entered summary judgment against them on their laches defense without proper notice, that there are genuine issues of material fact, and that laches bars only pre-filing monetary damages. The Court will address each argument in turn.

A. **Likelihood of Confusion Factors: Strength of Mark and Actual Confusion**

Before the Court considers Plaintiffs' arguments related to the likelihood of confusion, it will reiterate the scope of its analysis. "[T]he ultimate question in a Lanham Act case—are consumers likely to be confused about the source of the mark?—is one of law." *Sterling Jewelers, Inc. v. Artistry Ltd.*, 896 F.3d 752, 755 (6th Cir. 2018). However, "it may be helpful to think about the issue as a mixed question of fact and law." *Id*. "The determination of what is the state of affairs regarding each factor is a finding of fact" but "the further determination of the likelihood of confusion based on those factors is a legal conclusion." *Leelanau Wine Cellars, Ltd. v. Black & Red*, Inc., 502 F.3d 504, 516 (6th Cir. 2007); *Champions Golf Club, Inc., v. The Champions Golf Club, Inc*., 78 F.3d 1111, 1116 (6th Cir. 1996) ("We apply a clearly erroneous standard to the district court's findings of fact supporting the likelihood of confusion factors, but review *de novo* the legal question of whether those foundational facts constitute a 'likelihood of confusion.'"). In making the legal determination of the likelihood of confusion, there is no "mathematical precision." *Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*, 423 F.3d 539, 548 (6th Cir. 2005) ("[T]hese factors imply no mathematical precision, but are simply a guide to help determine whether confusion is

likely") (internal citations omitted). However, in their motion for reconsideration, Plaintiffs now point to Sixth Circuit precedent that counsels a district court to deny summary judgment when the *Frisch* factors are "evenly balanced." *Innovation Ventures, L.L.C., v. N.V.E., Inc.*, 694 F.3d 723, 733 (6th Cir. 2012). With this in mind, the Court reconsiders the two *Frisch* factors identified in Plaintiffs' motion for reconsideration.

        **i.     Strength of the "Atlas" Mark**

First, Plaintiffs argue that the Court erred in describing "Atlas" as a "weak mark." (ECF No. 90, PageID 3761). The Court recognizes that this characterization overshadows and misinterprets the Court's actual conclusion, which was that "Atlas" is a suggestive mark. *Id.* (discussing Plaintiffs' 2003 marketing material and concluding that "'Atlas' is a weak mark because it is suggestive of strength"). To clarify, the suggestive "Atlas" mark is "weak" only in that it is not as strong as an arbitrary or fanciful mark. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512 (6th Cir. 2007) ("[S]uggestive [marks] are inherently distinctive and protectable.") (internal citations omitted); *See also Two Pesos, Inc. v. Taco Cabana, Inc.* 505 U.S. 763, 769 (1992) ("Marks are often classified *in categories of generally increasing distinctiveness* . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.") (emphasis added); *Ultimate Living Intern., Inc. v. Miracle Greens Supplements, Inc.*, 2007 WL 14258 at *3 (N.D. Tex. 2007) ("As the mark is suggestive, the Court concludes that it is also strong, not weak, and that it is entitled to protection; however, it is not as strong as, nor entitled to the degree of protection generally afforded to, arbitrary or fanciful marks.").

Defendants championed the position that "as a suggestive mark, 'Atlas' is in the weakest

8

category of marks." (ECF No. 71, PageID 3007).¹ In doing so, Defendants misled the Court into making the wrong conclusion. Suggestive marks do not stand on the lowest rung of protectable trademarks. *See Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 795 (6th Cir. 2015) ("Marks fall on a 'spectrum' that ranges, in order of increasing strength, from (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful.") (internal citations omitted.). Rather, as a suggestive mark, "Atlas" is considered relatively strong. *See Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1190 (6th Cir. 1988) ("In light of the suggestive characteristics of the mark, and the United States Patent and Trademark Office's recognition of the mark, we hold that [the mark] is a relatively strong mark, worthy of full protection."); *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir. 1982) ("A strong mark generally is considered suggestive...").

Thus, this factor should have weighed in favor of finding a likelihood of confusion.

### ii. Actual Confusion

Next, Plaintiffs argue that the Court improperly dismissed their evidence of actual confusion. Plaintiffs offered four examples of "actual confusion:" (1) a police officer confusing Atlas trucks, (2) a person seeking household moving services who called Defendants, believing them to be Plaintiffs, (3) Plaintiffs' third-party logistics partner denying a transaction due to "credit issues" that actually belonged to Defendants, and (4) a market research survey that concluded that 19% of prospective consumers of freight transportation believed that Plaintiffs and Defendants has some sort of relationship.

The Court discounted three of these incidents, and inferred that there was no likelihood of

---

¹In fact, they continue to assert this position. (ECF No. 100, PageID 3880) ("As a suggestive mark, the word 'Atlas' stands on the lowest rung of protectable trademarks, as generic and descriptive marks are not normally entitled to protection.").

9

confusion:

> Three of these incidents have little, if any, probative value. The Indiana police officer and the third-party logistic partner are not actual consumers, so their confusion is "entitled to considerably less weight." *Homeowners Group*, 931 F.2d at 1110. Similarly, even though the market research survey focused on "prospective clients," this is still not the same as focusing on "actual consumers," who presumably exercise more care in choosing their freight hauler than a survey participant does when filling out a form. Thus, Plaintiffs only point to one meaningful instance of actual confusion: the August 24, 2017 call requesting moving services.
>
> Based on the evidence presented, the Court must conclude that, in the years that Plaintiffs and Defendants have simultaneously used the term "Atlas" to advertise their respective services, there has been only one instance of actual consumer confusion. This lack of significant actual confusion leads the Court to infer that no likelihood of confusion exists. *Id*.

(ECF No. 90, PageID 3764-65).

In their motion for reconsideration, Plaintiffs now direct the Court to *Champions Golf Club*, 78 F.3d 1111, 1119 (6th Cir. 1996). There, the Sixth Circuit stated that, because evidence of actual confusion is "difficult to produce and frequently discounted as unclear or insubstantial, the factor should be weighed heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." *Id*. (internal citations omitted). The Sixth Circuit also noted that "there is no requirement that evidence of actual confusion to be relevant, must be confusion at the point of sale—purchaser confusion— and not the confusion of nonpurchasing, casual observers." *Id*. (internal citations omitted).

Based on *Champions*, the Court must conclude that, although confusion by the police officer and logistics partner is entitled to "considerably less weight" than the purchaser's wrong number, they could still support a finding of actual consumer confusion.

Moreover, "survey evidence is circumstantial, not direct, evidence of the likelihood of

10

confusion." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:184.

Thus, Plaintiffs have cited one instance of significant purchaser confusion, two instances of confusion by people who "had an incentive to accurately identify" Plaintiffs, *Champions*, 78 F.3d at 1120, and circumstantial evidence of actual confusion. Viewing this evidence in Plaintiffs' favor, the actual confusion factor should have weighed in favor of finding a likelihood of confusion.

### iii. Conclusion as to Likelihood of Confusion Factors

Once the analysis in the Court's March 25, 2019 Opinion is corrected as explained above, the *Frish* factors weigh in favor of finding a likelihood of confusion by a balance of 4-2-2. As Plaintiffs now note, when the factors are "evenly balanced...precedent counsels in favor of *not granting* summary judgment." *Innovation Ventures*, 694 F.3d at 733. (emphasis added). The Court also notes that, based on its review of the previous opinion and the underlying record, it is not entirely clear whether and to what extent Plaintiffs compete with Defendants. (ECF No. 90, PageID 3762) (comparing Defendants' business records to a sworn affidavit from Plaintiffs' corporate counsel). Thus, it appears that there are genuine issues of material fact underlying the "relatedness of goods" and "evidence of actual confusion" factors as to all of Plaintiffs' trademark infringement claims. Because the *Frisch* factors present a close call, and because there are genuine issues of material fact underlying some factors, the Court erred by granting summary judgment to Defendants on Plaintiffs' trademark infringement claims. Accordingly, the Court will reinstate Plaintiffs' trademark infringement claims (Counts I, II, III, and IV).

### B. Counterfeiting Claims

Despite the revival of all of Plaintiffs' trademark infringement claims, the Court will revive only one of Plaintiffs' counterfeiting claims. "To recover on a federal trademark counterfeiting

claim, a plaintiff must show that: (1) the defendant infringed a registered trademark...and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." *Laukus v. Rio Brands, Inc.*, 391 Fed.App'x 416, 425 (6th Cir. 2010). Section 1116 defines "counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). Elsewhere, the statute provides additional clarification, defining "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "Spurious" is defined as "deceptively suggesting an erroneous origin; fake" Black's Law Dictionary (11th ed. 2019).

Here, Plaintiffs raised two counterfeiting claims: one for their registered "Atlas" mark and one for their registered "Atlas Logistics" mark. The Court concludes that the "Atlas" mark cannot be fairly understood to be "identical with, or substantially indistinguishable from," Defendants' use of the terms "Atlas Logistics" or "Atlas Trucking." However, the "Atlas Logistics" mark is identical to Defendants' use of "Atlas Logistics." Thus, only that counterfeiting claim may proceed. (Count VI)

### C. Laches

Plaintiffs argue that the Court entered summary judgment against them on their laches defense without proper notice, that there are genuine issues of material fact, and that laches bars only pre-filing monetary damages

#### i. Notice

Plaintiffs argue that the Court granted summary in favor of Defendant on Plaintiffs' laches

12

defense without notice. However, Plaintiffs put their laches defense at issue when they argued that it barred Defendants' counterclaims. And, as a practical matter, the issue of laches was raised and heavily litigated by all parties at summary judgment. The Court analyzed these arguments and came to conclusions about the applicability of laches in this case. Although Plaintiffs might disagree with the Court's conclusion, they should have known that they risked an adverse ruling when they raised the issue. Thus, the Court concludes that Plaintiffs had sufficient notice that the Court would make a ruling on the laches issue.

### ii. Issues of Material Fact

Plaintiffs argue that there are genuine issues of material fact underlying their laches defense. After reviewing this section of Plaintiffs' motion, the Court concludes that Plaintiffs do not present any new or different arguments than were presented at summary judgment. The Court notes that it already decided the question of whether Plaintiffs' first cease-and-desist letter put Defendants' on notice about Plaintiffs' claimed right in "Atlas Logistics," and that the concerns that Plaintiffs raise about the admissibility of evidence offered by Defendants should have been raised at summary judgment.

### iii. Damages

Finally, Plaintiffs ask the Court to clarify that its conclusion related to laches only bars pre-filing monetary damages. Plaintiffs are correct. Given the Court's conclusions about Plaintiffs' trademark infringement claims, laches, and estoppel, Plaintiffs may seek all monetary damages that resulted after June 29, 2017—the date that Plaintiffs filed this lawsuit.

## CONCLUSION

The Court concludes that its March 25, 2019 Opinion should be reconsidered, as described

above. Accordingly, the Court **REINSTATES** all of Plaintiffs' trademark infringement claims (Counts I, II, III, and IV) and one of Plaintiffs' counterfeiting claims (Count VI) against Atlas Trucking, Defendant Logistics, and Eaton Steel.[2] However, the Court's conclusion regarding the applicability of laches has not changed. Thus, going forward, Plaintiffs may seek only injunctive relief and post-filing monetary damages for their Lanham Act claims.

The next stage of this case is trial. A jury will determine the merits of Plaintiffs' Count I, II, III, IV, and VI, and Defendants' Counterclaim I and III. The Court sets a final pre-trial conference for **August 5, 2019 at 10:00 a.m.** A proposed Joint Pretrial Statement signed by counsel for all parties shall be filed with the Court one week prior to the Final Pretrial Conference. The requirements of such a pretrial order are attached to the scheduling order. All requirements must be complied with.

Because the main focus of the Final Pretrial Conference will be on settlement, counsel must bring their clients and any persons with full settlement authority up to Plaintiffs' demand and Defendants' counter-demand with them to the conference.

**IT IS SO ORDERED**.

Dated: July 3, 2019          s/Sean F. Cox
                                                            Sean F. Cox
                                                            United States District Judge

---

[2]At summary judgment, Defendants argued that Eaton Steel should be dismissed from this case because it "does not use any 'Atlas' mark to identify its own good or services." (ECF No. 71, PageID 3018). Plaintiffs responded to this argument. (ECF No. 76, PageID 3403). After reviewing the parties' positions, the Court agrees with Plaintiffs that Eaton Steel is a proper defendant because it is "actively advertising [potentially] infringing services under [potentially] infringing trademarks by companies it owns. *Id*.