UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AWGI, L.L.C.; Atlas Logistics, Inc.; and
Atlas Van Lines, Inc.

    Plaintiffs,

v.                                          Case No. 17-12131

Atlas Trucking Company, L.L.C.; Atlas        Sean F. Cox
Logistics, L.L.C.; and Eaton Steel Bar         United States District Court Judge
Company, Inc.,

    Defendants.
_____/

## OPINION AND ORDER REGARDING MOTIONS *IN LIMINE*

This trademark infringement case will proceed to a bench trial. Plaintiffs have filed two motions *in limine*, (ECF Nos. 120, 121), and Defendants have filed six motions *in limine*. (ECF No. 123).[1] For the reasons below, the Court will (1) grant Plaintiffs' motion to preclude Defendants from calling Plaintiffs' counsel to testify at trial; (2) deny without prejudice Plaintiffs' motion to preclude Defendants from reading Plaintiffs' corporate designee's deposition into the record; and (3) deny Defendants' motions.

## BACKGROUND

This is a trademark case about the use of a stylized "A" and the terms "Atlas," "Atlas Logistics," and "Atlas - - the Agent's Van Line." The plaintiffs are Atlas Van Lines (which is primarily a household moving company), Atlas Logistics, Inc. (a logistics management service) ("Plaintiff Logistics"), and AWGI, LLC (the holding company for Van Lines and Plaintiff

---

[1]Defendants included all of their motions in one document.

1

Logistics). The defendants are Eaton Steel Bar Company (a steel manufacturer) and its affiliated trucking and logistics companies, Atlas Trucking Company, LLC, and Atlas Logistics, LLC ("Defendant Logistics").

Plaintiffs alleged four counts of trademark infringement under the Lanham Act, two counts of trademark counterfeiting under the Lanham Act, and one count of common law unfair competition. Defendant Logistics counterclaimed against Plaintiff Logistics and AWGI for one count of unfair competition and false designation of origin under the Lanham Act, and one count of common law unfair competition. Defendant Logistics also seeks a declaratory injunction, pursuant to § 1119 of the Lanham Act, stating that Plaintiffs' trademark in "Atlas Logistics" was improperly registered and directing the Commission of Patents and Trademarks to cancel it.

Following the Court's rulings on the parties's cross-motions for summary judgment, (ECF Nos. 90, 106), these are the claims that will proceed to trial:

| | Plaintiffs | |
|---|---|---|
| | Type of Claim | Mark at Issue |
| **Count I** | Trademark Infringement | "Atlas" |
| **Count II** | Trademark Infringement | "Atlas Logistics" |
| **Count III** | Trademark Infringement | Stylized A Logo |
| **Count IV** | Trademark Infringement | "Atlas--The Agents' Van Line" |
| **Count VI** | Counterfeiting | "Atlas Logistics" |

| | Defendants | |
|---|---|---|
| | Type of Claim | Mark at Issue |
| **Counterclaim I** | Unfair Competition and False Designation of Origin | "Atlas Logistics" |
| **Counterclaim III** | Dec. Inj. re Cancelling Plaintiffs' Trademark | "Atlas Logistics" |

The parties stipulated to a bench trial and withdrew all requests for any type of monetary relief. (ECF No. 111). Whoever prevails at trial will receive only injunctive relief.

On November 8, 2019, the parties filed their motions *in limine*. (ECF Nos. 120, 121, 123). Generally, the Plaintiffs would like (1) to bar Defendants from calling Plaintiffs' lead trial counsel

to testify, and (2) to prevent Defendants from reading a deposition into evidence because the deponent will testify live at trial. Defendants would like (1) to exclude any evidence regarding the public's perception of Plaintiffs' marks; (2) to exclude any evidence regarding "actual confusion"; (3) to exclude evidence regarding Plaintiffs' advertising expenditures; (4) to preclude Plaintiffs from asserting that they haul steel; (5) to exclude the expert testimony of Krista Holt; and (6) to exclude a magazine article regarding an award Plaintiffs allegedly won. Each side responded to the other's motions (ECF Nos. 129, 130, 131), and filed replies in support of their own motions. (ECF Nos. 136, 137, 139). The Court heard oral arguments on these motions on December 12, 2019.

## ANALYSIS

### I. Motions *in Limine* Generally

Trials are dynamic, and a district court should grant a motion *in limine* "only when that evidence is clearly inadmissible on all potential grounds." *Palmer v. Allen*, 2017 WL 218077 at*1 (E.D. Mich. Jan. 19, 2017) (quoting *Ind. Ins. Co. v. GE*, 326 F. Supp.2d, 844, 846 (N.D. Ohio 2004)). In cases where that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in a proper context." *Id*. Denial of a motion to exclude evidence *in limine* does not necessarily mean that the Court will admit the evidence at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984). "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id*. at 41-42.

### II. Plaintiffs' Motions

Plaintiffs have filed two motions *in limine*: a motion to preclude Defendants from calling Plaintiffs' trial counsel, Mark Warzecha, to testify at trial (ECF No. 120); and a motion to preclude

Defendants from reading into evidence the deposition testimony of Plaintiffs' corporate designee Ryan McConnell, who will testify live at trial (ECF No. 121).

### A. Motion Regarding Plaintiffs' Counsel

Defendants have indicated that they may call Plaintiffs' counsel, Mark Warzecha, to testify at trial. Plaintiffs object, arguing that Defendants cannot meet the required showing for compelling a party's attorney to testify and that requiring counsel to testify implicates his ethical obligations.

When considering whether to compel a party's attorney to testify at trial, courts in the Sixth Circuit apply the Eighth Circuit's "*Shelton* test." *See Alomari v. Ohio Dep't of Public Safety*, 626 Fed.App'x 558, 573 (6th Cir. 2015) ("This circuit has adopted the so-called '*Shelton* rule'. . ."); Under the *Shelton* test, a party seeking testimony from an attorney must show that (1) no other means exist to obtain the information at issue; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the case. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *see also Gazvoda v. Secretary of Homeland Security*, 2018 WL 1281756 at *6-*7 (E.D. Mich. 2018) (applying *Shelton* in a ruling on a motion in *limine*); *Commercial Law Corp., P.C. v. Fed. Deposit Ins. Corp.*, 2015 WL 7450149 at *5-*6, n.7 (E.D. Mich. 2015) (same).

Defendants argue that counsel's testimony is necessary because he filed and prosecuted the Plaintiffs' "Atlas Logistic" trademark at the Patent and Trademark Office. In the application, counsel attested that Plaintiffs had first used this mark in commerce "at least as early as December 3, 2012." (ECF No. 137, PageID 4521). Defendants allege that they used the "Atlas Logistics" mark at least as early as September 2005. After Defendants argued that the application indicated that Plaintiffs had begun using the "Atlas Logistics" mark after Defendants' first use, "Plaintiffs reversed

4

course and claimed that the December 3, 2012 date. . . was a 'scrivener's error.'" (ECF No. 130, PageID 4411). Defendants seek to call counsel to question him about that scrivener's error because he was the scrivener.

The Court concludes that no part of the *Shelton* test is met. First, counsel's possible testimony regarding Plaintiffs' first use of "Atlas Logistics," and the information contained in the trademark application, is likely subsumed by the testimony of Plaintiffs' executives, who can testify as to whether the date on the application is correct. Second, the disclosure of how counsel obtained the information he placed on the application and what that information was—necessary predicates to the relevancy of counsel's testimony regarding the scrivener's error—would likely implicate privileged client communications. Third, testimony regarding this alleged scrivener's error is not crucial to the case. The relevant issue is which party first used "Atlas Logistics" or its legal equivalent. The accuracy of the trademark application is not dispositive of this issue, and the applicable date can be established using other testimony. Because Defendants have not established the *Shelton* factors, the Court will grant Plaintiffs' first motion *in limine*. (ECF No. 120).

**B.      Motion Regarding Reading Deposition into Record**

Defendants have indicated that they would like to read into the record portions of the transcript from the deposition of Plaintiffs' corporate representative, Ryan McConnell. Plaintiffs object, arguing that such a reading is unnecessary because McConnell will be testifying live at trial. Defendants respond that they want to ensure that McConnell's testimony on behalf of the company—rather than his testimony as an individual—is in the record. The parties agree that the Court has "broad discretion" to decide this motion. (ECF No. 121, PageID 4184); (ECF No. 129, PageID 4404).

5

The parties appear to agree more than they disagree about this issue. Plaintiffs admit that, as their Vice President of Strategic Planning and corporate designee, McConnell's testimony binds them. (ECF No. 138, PageID 4537). And Plaintiffs concede that McConnell's deposition may be used for impeachment purposes and that, during closing arguments, Plaintiffs may read any portion of the transcript that has been admitted into evidence. Thus, it appears that the only dispute is whether the Defendants can, as a matter of right, enter the deposition into evidence and read it during their opening statement.

A federal district court recently grappled with this precise issue and outlined the appropriate framework [2] under which to evaluate this motion:

> Whether to admit deposition testimony in evidence at trial rests within the district court's broad discretion. *Lear v. Equitable Life Assurance Soc'y*, 798 F.2d 1128, 1135 (8th Cir. 1986); *accord Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310 F.R.D. 341, 344 (E.D. Mich. 2015). It also is within a district court's "broad discretion to conduct [a] trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives" to ensure the fair and complete presentation of evidence. *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (internal quotation marks omitted) (reviewing evidentiary rulings in the context of Federal Rule of Evidence 106); *see also* Fed. R. Evid. 106 advisory committee's note (explaining that Rule 106 "is an expression of the rule of

---

[2] As to the case law on this issue, the parties dispute the applicability of the Sixth Circuit's decision in *Kelly Services, Inc., v. Creative Harbor, L.L.C.*, 846 F.3d 857 (2017), and the Honorable Gershwin Drain's decision in *Gonzalez Production Systems, Inc., v. Martinrea International Inc.*, 310 F.R.D.. 341 (E.D. Mich. 2015). In *Gonzalez*, Judge Drain precluded a party from using the opposing party's corporate designee's deposition at trial when he would be testifying live. In doing so, Judge Drain also acknowledged that, at that time, there was some uncertainty as to whether and to what extent a designee's testimony bound the company. *Kelly Services* resolved this uncertainty by holding that a designees' testimony does, in fact, bind the company. *Kelly Services*, 846 F.3d at 867. In the Court's view, *Kelly Services* resolved—at best—one of Judge Drain's secondary concerns about the legal landscape in which he was operating. The Court agrees with Defendants that *Kelly Services* does not diminish the persuasive value of *Gonzalez*. And the Court finds that *Feinwachs*—which relies in part on *Gonzalez*—provides further persuasive support for the conclusion that this is the correct legal framework.

6

completeness" and "is substantially a restatement" of the analogous rule applicable to depositions pursuant to Federal Rule of Civil Procedure 32(a)). A district court may exclude otherwise admissible evidence if the probative value of such evidence is substantially outweighed by countervailing dangers, including "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Although Federal Rule of Civil Procedure 32(a)(3) permits a party to use the deposition testimony of an opponent's corporate officer for any purpose, district courts often "require that a deposed witness testify live, if available" because "it is always better if the jury can observe the witness firsthand to judge [the witness's] demeanor." *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989-90 (8th Cir. 1999) (internal quotation marks omitted). "The practice cannot possibly cause unfair prejudice, because the party wishing to use deposition testimony can call the adverse witness live, impeach [the adverse witness] with the deposition if necessary, and even question the witness using the exact same questions asked at the deposition." *Id*. at 990 (affirming district court's refusal to permit plaintiff to use the deposition testimony of defendant's corporate officer, who was available to testify); *Gonzalez Prod. Sys.*, 310 F.R.D. at 344 (reasoning that, although the deposition of a party's corporate representative may be used for any purpose, "nothing in the [rule] indicates that [it] may be used at any time or in any manner as a party sees fit").

*Feinwachs v. Minnesota Hospital Association*, 2019 WL 4298085 at *10 (D. Minn. Sep. 11, 2019).

Here, McConnell is available, and will be testifying at trial. Defendants will have the opportunity to ask him the precise questions that they asked him at his deposition and, if the answers differ, may use the deposition for impeachment purposes. Because live testimony would allow the Court to assess McConnell's credibility in responding to Defendants' questions, it is the preferred manner of eliciting his testimony. Also, the probative value of the deposition transcript itself is substantially outweighed by the risk of undue delay, wasted time, and cumulative evidence. Thus, generally, it would not be appropriate for Defendants to read or admit the deposition transcript in lieu of live testimony.[3]

---

[3]The verbatim reading of the deposition transcript during Defendants' opening statement would also be inappropriate because it is not, itself, substantive evidence yet. However, to the

7

That being said, at the hearing, Defendants' counsel seemed to agree that live testimony was generally preferable, and appeared to suggest that he only wanted to reserve the option to read the deposition, if appropriate, after McConnell's live testimony. Thus, it is unclear as to whether Defendant will actually request to read the deposition into the record. Accordingly, the Court is not convinced that this issue is appropriate for a pre-trial motion *in limine*, and will deny it without prejudice. If, after McConnell's live testimony, Defendants still wish to introduce the deposition transcript into the record, and Plaintiffs still object, Plaintiffs may re-raise this challenge.

## III. Defendants' Motions

Defendants raise six motions *in limine*. The Court concludes that most of these motions go to the weight that the Court should give to the disputed evidence at trial, not its admissibility. The Court will address each motion in turn.

### A. Evidence Regarding Public Perception

In this motion, Defendants seek to exclude "opinion testimony, hearsay evidence, testimony not based on personal knowledge, and/or other evidence not disclosed in the course of discovery offered by Plaintiff related to the public's perception of its trademarks." (ECF No. 123, PageID 4258). Plaintiffs respond that Defendants have failed to identify any specific evidence that they wish to exclude.

The Court agrees that Defendants fail to point to any specific evidence they seek to exclude. Orders on motions *in limine* that "exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Tucker v.*

---

extent that Defendants believe that McConnell's deposition is indicative of how he will testify at trial, they may of course reference it during their opening statement.

*Nelson*, 390 F.Supp.3d 858, 861 (S.D. Ohio, June 3, 2019).  The better practice is to deal with these types of questions of admissibility at trial because the Court will be better able to assess the value and utility of the specific evidence. *See Tucker*, 390 F.Supp.3d at 861.  Accordingly, the Court will deny this motion.

### B. Evidence Regarding Actual Confusion

In this motion, Defendants seek to exclude a series of internal emails from their employees that describe instances of reported confusion among possible consumers and the general public. Defendants object to these emails only as "irrelevant and inadmissible under Fed. R. Evid. 402 and 403 because they do not establish actual confusion." (ECF No. 123, PageID 4259).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "Relevant evidence is admissible unless any of the following provides otherwise:" (1) the United States Constitution; (2) a federal statute; (3) these rules; or (4) other rules prescribed by the Supreme Court.  Fed. R. Evid. 402. However, Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Defendants' arguments on this issue largely go to the weight that the Court should give this evidence, not its admissibility. For example, they cite *Therma-Scan Inc., v. Thermoscan, Inc*., 295 F.3d 623, 636 (6th Cir. 2002), for the proposition that "it is possible for occasional misplaced 'mail and phone calls 'to be *de minimis* and to show inattentiveness on the part of the caller or sender rather than actual confusion.'"" That may be true, but determining whether evidence amounts to only

9

a *de minimis* showing is necessarily a question of its weight.

As to admissibility, the emails are relevant. One of the factors that the Court must consider in evaluating the claims in this action is the "evidence of actual confusion." *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (citing *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc*., 670 F.2d 642, 648 (6th Cir. 1982)). These emails tend to make it more probable that consumers or members of the general public have actually confused the parties' marks. This fact is of consequence to this action because, as the Sixth Circuit has recognized, evidence demonstrative of actual confusion can be "the most probative proof of the likelihood of confusion." *Frisch's Restaurants*, 759 F.2d at 1267. And the Court sees no risk of unfair prejudice, confusion, undue delay, wasted time, or needlessly cumulative evidence. Accordingly, the Court will deny this motion.

## C. Evidence Regarding Plaintiffs' Advertising Expenditures

In this motion, Defendants seek to preclude Plaintiffs from offering evidence or testimony regarding their advertising expenditures, arguing that this evidence is irrelevant. Plaintiffs argue that this evidence is relevant to the strength of its marks.

The strength of the mark factor "focuses on the distinctiveness of a mark and its recognition among the public." *Progressive Distribution Services, Inc. v. United Parcel Service, Inc*., 856 F.3d 416, 427 (6th Cir. 2017) (quotations omitted). This strength evaluation encompasses two separate components: "(1) 'conceptual strength,' or 'placement of the mark on the spectrum of marks,' which encapsulates the question of inherent distinctiveness; and (2) 'commercial strength' or 'the marketplace recognition value of the mark.' " *Id*. at 428 (quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc*., 679 F.3d 410, 419 (6th Cir. 2012)).

As to the conceptual strength prong of this analysis, the Court previously concluded that Plaintiffs' marks were suggestive. However, "[b]ecause the strength of a trademark for purposes of the likelihood of confusion analysis depends on the interplay between conceptual and commercial strength, the existence or non-existence of distinctiveness is not the end of the inquiry." *Id.* (citation omitted). The Court must also evaluate the marks' commercial recognition, and the Sixth Circuit has found that "proof of marketing may be sufficient to support a finding of 'broad public recognition.'" *Id.* (citing *Therma-Scan, Inc.,* 295 F.3d 623 at 634). Accordingly, evidence regarding Plaintiffs' advertising is relevant to this action, and the Court will deny this motion.

### D. Evidence Regarding Plaintiffs' Participation in the Steel-hauling Industry

In this motion, Defendants seek to exclude any evidence that Plaintiffs haul steel. Defendants do not articulate what authority supports this request.

The Court previously found that, based on the evidence presented at summary judgment, "it is not entirely clear whether and to what extent Plaintiffs compete with Defendants." (ECF No. 106, PageID 3953). The Court concluded that there is a genuine issue of material fact underlying the "relatedness of goods" factor. *Id.* Defendants seem to be asking the Court to prevent Plaintiffs from presenting evidence on a factual issue that the Court has already decided must be determined at trial.

Far from being appropriate for a motion *in limine*, the Court believes that this issue (i.e. whether Plaintiffs ship the same or similar products as Defendants) is an important factual issue for trial. Thus, the Court will deny this motion.

### E. Plaintiffs' Expert Testimony

In this motion, Defendants seek to exclude expert testimony from Krista Holt, who surveyed past and prospective customers of freight transportation about their perception of the likelihood of

11

confusion between the relevant marks.

"District court judges must determine whether an expert's testimony is both relevant and reliable when ruling on its admission." *Clay v. Ford Motor Company*, 215 F.3d 663, 667 (6th Cir. 2000). A trial judge's determinations regarding the admissibility of expert testimony are guided by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 of the Federal Rules of Evidence governs testimony by experts and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert,* the trial court acts as a "gatekeeper" that ensures that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert* sets forth a nonexclusive list of factors relevant to this inquiry: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S at 593-94. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court confirmed that "the general gatekeeping obligation set forth in *Daubert*" "applies when considering all expert testimony, including testimony based on technical and other specialized

knowledge." *Clay*, 215 F.3d at 667. "It further held that the specific *Daubert* factors—testing, peer review and publication, potential rate of error, and general acceptance in the relevant community—may be considered by the district court even when the proffered expert testimony is not scientific." *Id*. Whether these specific factors are reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. *Id.*

"It is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10). A district court is not obligated to hold a formal *Dauber*t hearing. *See Clay*, 215 F.3d at 667; *Nelson*, 243 F.3d at 249.

Here, Defendants argue that Holt's testimony is irrelevant and unreliable. As the proponents of the expert testimony, Plaintiffs describe the survey's methodology in detail:

> In this case, Ms. Holt designed a survey to assess whether or not there is a likelihood of confusion among past or prospective customers of freight transportation or for-hire trucking services "when exposed to the use of the 'Atlas' federally registered service mark by [Defendants] in the results of an actual web search for the federally registered service mark 'atlas logistics.'"
>
> Qualified survey respondents were divided into a test cell (120 respondents) and a control cell (110 respondents). The respondents in the test cell were shown the results page of an Internet search using "atlas logistics" as the search term. The results page included listings for Plaintiffs Atlas Logistics and Defendants Atlas Trucking & Logistics. Twenty one percent of the respondents in the test cell believed that Plaintiff Atlas Logistics' website and Defendant Atlas Trucking & Logistics' website are from the same company or have a business affiliation or a business connection with one another.
>
> The respondents in the control cell were shown a search results page nearly identical to what the respondents in the test cell saw, except that the listing for "Atlas Trucking & Logistics" was replaced with a listing for "Arcade Trucking & Logistics." Two percent of the respondents in the control cell believed that Plaintiffs Atlas Logistics' website and Arcade Trucking & Logistics' website are from the same company or have a business affiliation or a business connection with one another.

13

> By subtracting the 2% "noise" figure in the control cell from the 21% figure in the test cell, Ms. Holt arrives at a 19% net confusion rate and concludes that "past and prospective consumers of Atlas Trucking & Logistics are likely to be confused regarding an association between Atlas Trucking & Logistics and Atlas."

(ECF No. 131, PageID 4438-4440) (citations to Holt's report (ECF No. 72) omitted).

Defendants' objections to this survey are that (1) it provided a "stimulus" (i.e. "atlas trucking") that is not the trademark at issue ("Atlas"); and (2) it did not expose the survey participants to the mark in question ("Atlas"), nor did it simulate how consumers would encounter that mark in the real world.

Generally, errors in survey methodology are more properly directed against the weight a factfinder should give the survey, not its admissibility. *See Innovation Ventures, LLC v. NVE, Inc.*, 90 F.Supp.3d 703, 720-21 (E.D. Mich. 2015) (collecting cases). The Court concludes that the purported errors that Defendants have identified are "more akin to technical deficiencies than to major flaws capable of skewing the reliability of the results." *Id.* at 721. Accordingly, the Court will deny this motion.

However, Defendants are directed that, "[t]o the extent [they] have specific, articulable objections to the admissibility of [Holt's] opinions, [they] should raise them during trial, after [Plaintiffs have] laid a foundation for the testimony." *United States v. Stone*, 2012 WL 175161 at *2 (E.D. Mich. 2012). At that time, Defendants may question Holt, and the Court may decide to exclude testimony based on her responses. *See Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 Fed.Appx. 479, 484 (6th Cir. 2002) ("The judge must simply keep watch over the proceedings, and, with the aid of objections from council [sic], eliminate methodologically unsound or irrelevant expert testimony").

F.  **Evidence Regarding Plaintiffs' Purported Award**

In this motion, Defendants seek to exclude magazine articles that describe Plaintiffs as winning an award from the Logistics Management & Distribution Report. Defendants argue that the articles are hearsay and ask that they "be excluded for the purposes of showing that Plaintiffs use the trademark 'Atlas' in the logistics industry." (ECF No. 123, PageID 4267-68).

Plaintiffs respond that Defendants agreed to the articles' admissibility in the Joint Submission of Agreed Upon Exhibits, and that the magazine is not hearsay because they will not offer it for the truth of the matter asserted.

"Hearsay" is an assertion "that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(a)-(c). Generally, hearsay is not admissible, unless an exception applies. Fed. R. Evid. 802 and 803. Here, Plaintiffs argue that the articles would not be offered for the truth of the matter asserted:

> Plaintiffs will not offer the Exhibits to prove that Plaintiffs were worthy of the awards, or that the 3,000 respondents who took the survey in 2002 conducted by Logistics Management & Distribution Report were correct in ranking Atlas in the top two for online performance, value, information technology, customer service or equipment and operations, for the fifth year in a row (although all that is, in fact, true). Instead, Plaintiffs will offer the Exhibits to show that Plaintiffs used "Atlas" for logistics services at least as early as 1998. Because Plaintiffs will not be offering either Exhibit to establish the truth of the matter asserted in the Exhibit, neither is hearsay.

(ECF No. 131, PageID 4443).

Plaintiffs may have described a scenario where the articles would be non-hearsay because they are not being offered for the truth of the matter asserted. Thus, the Court cannot conclude that the articles are clearly inadmissible on all potential grounds. The admissibility of the award will

15

need to be determined at trial and, accordingly, the Court will deny this motion.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs' Motion to Preclude Defendants from Calling Plaintiffs' Trial Counsel to Testify at Trial (ECF No. 120); **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion to Preclude Defendants from Reading Into Evidence at Trial Deposition Testimony of McConnell (ECF No. 121); and **DENIES** Defendants' Motions *in Limine* (ECF No. 123).

**IT IS SO ORDERED.**

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: December 30, 2019