UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AWGI, L.L.C.; Atlas Logistics, Inc.; and
Atlas Van Lines, Inc.,

      Plaintiffs,

v.                                  Case No. 17-12131

Atlas Trucking Company, L.L.C.; Atlas        Sean F. Cox
Logistics, L.L.C.; and Eaton Steel Bar       United States District Court Judge
Company, Inc.,

      Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY PERMANENT INJUNCTION PENDING APPEAL (ECF No. 170)

After a seven-day bench trial in this trademark infringement action, the Court found for Plaintiffs and entered a permanent injunction against Defendants. The Court's injunction prohibits Defendants from using the word "Atlas" to identify their services within the transportation and logistics industry. Defendants now move to stay the injunction pending appeal.

For the reasons below, the Court will deny Defendants' motion to stay.

### BACKGROUND

The Court provided a comprehensive description of this case's three-year history in its June 30, 2020 Opinion and Order on Pending Motions and Findings of Fact and Conclusions of Law. (ECF No. 164, PageID 5799-5816); *AWGI, LLC, et. al., v. Atlas Trucking Company, LLC*, 2020 WL 3546100 at *1-*9 (E.D. Mich. June 30, 2020). In January 2020, the Court presided over a seven-day bench trial on Plaintiffs' trademark infringement claims and Defendants' counterclaims. After the trial, the Court found in favor of Plaintiffs and against Defendants, and entered a

1

permanent injunction against Defendants. Generally, the Court's injunction bars Defendants from using specific "Atlas" marks in the sale or advertising of transportation and logistics services. (ECF No. 169). As originally issued, the injunction ordered Defendants to destroy all of their advertisements that contain an "Atlas" mark, including all signage on any truck or trailer, within sixty days. (ECF No. 169, PageID 5896). The Court later extended this deadline for compliance by an additional sixty days (ECF No. 176). Defendants now must comply with the injunction on or before October 28, 2020. *Id*.

On July 2, 2020, Defendants moved to stay the injunction pending their then-imminent appeal. (ECF No. 170).[1] Defendants argue that they are likely to prevail on appeal and that forcing them to comply with the injunction will cause them irreparable harm. Defendants also argue that a stay would not harm Plaintiffs or the public interest.

On July 16, 2020, Plaintiffs filed a response in opposition to Defendants' motion to stay. (ECF No. 173). Plaintiffs argue that Defendants have not shown a likelihood of success on appeal and that the harms they face are not irreparable. Plaintiffs also argue that, absent an injunction, Defendants will continue to harm them and the public interest through the infringing use of the "Atlas" marks.

That same day, Defendants filed a reply in support of their motion. (ECF No. 174). The Court heard oral arguments via Zoom videoconferencing software on August 20, 2020.

## ANALYSIS

When a party seeks to stay an injunction pending appeal, the Court considers four factors: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the

---

[1] Defendants filed their notice of appeal on July 29, 2020. (ECF No. 178).

likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*

The interrelatedness of the first two factors is particularly important; the Sixth Circuit has acknowledged an inverse relationship between the likelihood-of-success factor and the likelihood-of-irreparable-harm factor. Put simply, more of one can compensate for less of the other:

> To justify the granting of a stay, ... a movant need not always establish a high probability of success on the merits. *Ohio ex rel. Celebrezze* [*v. Nuclear Regulatory Com'n*], 812 F.2d [288] at 290 [(6th Cir. 1987)] (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id.* Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4. (6th Cir.1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." [*in re*] *DeLorean*, 755 F.2d [1223] at 1229 [(6th Cir. 1985)] (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

*A. Philip Randolph Institute v. Husted*, 907 F.3d 913, 918-919 (6th Cir. 2018) (quoting *Michigan Coalition*, 945 F.2d at 153-154).

## I.    Defendants' Likelihood of Success on Appeal

To receive a stay, Defendants must "demonstrate…that there is a likelihood of reversal." *Michigan Coalition*, 945 F.2d at 153. This likelihood need not rise to the level of a "high probability of success on the merits" if Defendants can show an inversely proportional threat of irreparable harm. *Husted*, 907 F.3d at 918-919. But, even if serious, irreparable harm is imminent,

3

Defendants must still demonstrate more than the *possibility* of success on appeal; Defendants must raise "serious questions going to the merits." *Id*.

Defendants' attack on the Court's decision proceeds on four fronts. First, Defendants contend that the Court's findings "are so broad that none of the hundreds of companies in the transportation and logistics field that use the word 'Atlas' in their names could continue to do so." (ECF No. 170, PageID 5907). Second, Defendants believe that this Court disregarded *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16 (6th Cir. 1966), a Sixth Circuit case that dealt with the word "Atlas" as a trademark.  Third, Defendants argue that the Court's conclusion regarding the priority of the "Atlas Logistics" mark "rests at least in part on an internal inconsistency." Fourth, Defendants disagree with the Court's conclusion regarding the seventh *Frisch* factor, which considered Plaintiffs' adverse intent in choosing to use the "Atlas" marks.[2]

None of these arguments raise a serious question that goes to the merits of this case. To begin, the Court's Opinion only binds the parties in this case.  *See, e.g., NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007) ("[O]utside of future litigation involving the same parties and their privies…a district court opinion does not have binding precedential effect.") (cited favorably in *Ohio A. Philip Randolph Institute v. Larose*, 761 Fed.App'x 506, 513 n.4 (6th Cir. 2019)). The Court made a discrete, fact-specific decision regarding Plaintiffs' trademark rights as they relate to Defendants' use of the "Atlas" marks. No

---

[2] Defendants state that their "forthcoming Appeal Brief will more fully set forth the reasons that [they] should prevail." (ECF No. 170, PageID 5909). For the purposes of deciding whether there is a likelihood of success on appeal, the Court can only look to the arguments before it (i.e. those arguments that are raised in Defendants' motion to stay). The Court cannot, and will not, speculate on which other arguments Defendants will raise in their appellate brief, nor will the Court craft any arguments for Defendants.

more, no less. Whether other companies in the transportation and logistics industries are also infringing on Plaintiffs' trademarks is an issue for another case, where the presiding judge will have to make their own discrete decision based on the facts presented, and is an issue that is largely irrelevant to the merits of how this case has been litigated.[3]

Next, *Atlas Supply Co.*—despite its superficial similarities—does not support Defendants' arguments as to the merits of this case. That case dealt with the use of the mark "Atlas" in marketing tires, car batteries, and other car accessories in the Cincinnati, Ohio market in the 1960s. The Sixth Circuit observed that "[t]here is evidence in the record that the name 'Atlas' is used by approximately thirty-five business concerns in the Cincinnati area," which "indicates that 'Atlas' is a rather 'weak' mark." *Atlas Supply Co.*, 360 F.2d at 18.

This case does not concern the marketing of tires, car batteries, and other car accessories in 1960s Cincinnati. The Court's Opinion made a fact-specific ruling based on the evidence presented at trial on the parties' use of the marks, commercial practices, and marketplaces. These

---

[3] In its Conclusions of Law, the Court examined an argument advanced by Defendants that extensive third-party use of the "Atlas" marks in the transportation and logistics industries could weaken the "Atlas" marks' commercial strength. (ECF No. 164, PageID 5858-5860). The Court concluded that Defendants had failed to sufficiently substantiate this argument. (ECF No. 164, PageID 5861) ("Defendants' evidence attacking the commercial strength of ATLAS therefore fails in two respects, each of which is individually fatal. Defendants presented no evidence (1) that any third party actually uses ATLAS, or that (2) any third party makes such use in offering Transportation or Logistics Services. Accordingly, the Court finds that Defendants have no established that the commercial strength of ATLAS has been weakened.") In their motion to stay, Defendants do not argue that this conclusion regarding commercial strength was incorrect. They only bring up third-party use out of apparent concern that the Court's decision is so broad as to give Plaintiffs the unfettered power to institute a trademark-infringement suit against every company that uses an Atlas mark in the relevant industries. As explained above, this concern is misplaced.

5

factual differences distinguish this case from *Atlas Supply*.[4] To accept Defendants' reading of *Atlas Supply* would be to conclude that "Atlas" is a weak trademark *as a matter of law*, for all time and space and under all circumstances. Given the fact-intensive nature of trademark infringement disputes, this interpretation of *Atlas Supply* is incorrect.

Defendant's third argument, which alleges an "internal inconsistency" in the Court's conclusion regarding priority of the "Atlas Logistics" mark is irrelevant to the outcome of this case. Defendants offered two invoices from 2005 to establish their first use of the term "Atlas Logistics" as a trademark. Defendants isolate one paragraph from the 262-paragraph Findings of Fact and Conclusions of Law where the Court concludes that these invoices "do[] not show that Defendants' provided Logistics Services to the recipient. The invoice[s] show[] only the rendition of Transportation Services." (ECF No. 164, PageID 5877). Given the Court's earlier observation that "Transportation and Logistics Services are 'the same' or at least 'closely related' to each other," (ECF No. 164, PageID 5822), Defendants object to the Court's parsing of these services as they relate to the 2005 invoices.

When viewed in context, this alleged inconsistency is immaterial to any outcome-determinative issue. Immediately before the Court made that allegedly inconsistent statement, the Court held that "Defendants' invoice[s] do[] not constitute open or public use of ATLAS LOGISTICS. [They are], instead, a private communication between two companies." (ECF No. 164, PageID 5877) (citations omitted). Thus, as most relevant to the merits, the Court held that the invoices did not entitle Defendants to *any* trademark rights in "Atlas Logistics" for *any* services.

---

[4] To be sure, the Court cited *Atlas Supply* in its opinion and order on the parties' motions for summary judgment. (ECF No. 90, PageID 3761). But the Court corrected course when it reconsidered that opinion.

(ECF No. 164, PageID 5875-5876). Even if the 2005 invoices evidenced the rendition of both Transportation and Logistics Services, they still do not establish trademark rights because they were private communications, not open and public uses of the "Atlas Logistics" mark.

Moreover, the Court concluded that Plaintiffs can tack their use of the "Atlas Logistics" mark onto their use of "Atlas" as a trademark, which dates back to the 1970s. (ECF No. 164, PageID 5879-5883). Even if the invoices show that Defendants used "Atlas Logistics" as a trademark in the Transportation and Logistics industries in 2005, Defendants still have priority to that mark. Thus, this argument cannot establish any likelihood of reversal on appeal.

Finally, Defendants' argument regarding the Court's conclusion as to the seventh *Frisch* factor would not change the posture of this case on appeal, even if a reviewing court agreed with it. The Court found that this factor, which deals with the adverse intent of the allegedly infringing party in selecting the relevant mark, weighed in favor of finding a likelihood of confusion. (ECF No. 164, PageID 5874). Defendants object to this conclusion, arguing that the Court relied on circumstantial evidence and citing the testimony of their top executive, Mark Goodman, who testified that "Atlas" had been chosen in accordance with a mythological naming convention that Defendants employ. However, even if Defendants had no adverse intent in selecting the "Atlas" marks, "the lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source." *Daddy's Junky Music Store, Inc., v. Big Daddy's Family Music Center*, 109 F.3d 275, 287 (6th Cir. 1997) (citations omitted). In other words, even if the Sixth Circuit agrees with Defendant on this point, that conclusion would not reduce the likelihood of confusion in this case, which (as explained in the Court's analysis of the other *Frisch* factors) is high.

Thus, the Court concludes that Defendants' motion to stay does not present serious questions that go to the merits of this case or raise a likelihood of reversal on appeal. This factor weighs against staying the injunction.

## II. Defendants' Likelihood of Irreparable Harm

This stay factor looks to the likelihood that Defendants will be irreparably harmed if the injunction is enforced. "The key word in this consideration is *irreparable*." *Michigan Coalition*, 945 F.2d at 154 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) (emphasis in original). "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough." *Id*. "In addition, the harm alleged must be certain and immediate, rather than speculative or theoretical." *Id*.

Defendants point to four harms that they will face if the injunction is not stayed. First, Defendants will "lose revenue while their trucks are decommissioned and modified." (ECF No. 170, PageID 5909). Second, Defendants will "need to expend hundreds of thousands of dollars in order to rebrand their assets," including "trucks and associated equipment, the Atlas Trucking, LLC website, and pre-printed stationary." (ECF No. 170, PageID 5910). Third, Defendants will "need to amend all pertinent listings with regulatory bodies such as the Department of Transportation, FMCSA, and SAFER, as well as update their insurance carriers." *Id*. Fourth, Defendants' rebranding "will cause confusion among existing customers or potential referrals," which "has a real and nontrivial potential to result in loss of business for Defendants, and result in loss of goodwill and permanent damage to Defendants'…reputation." *Id*.  In Defendants' reply, they expand on this fourth harm by arguing that "reputational harm can come from, for example,

lapses in truck availability during the rebranding period that would cause delays in…deliveries." (ECF No. 174, PageID 5946).

To be sure, Defendants will be burdened by the injunction. But, most of these alleged harms are not *irreparable*. Rebranding expenditures, loss of revenue, loss of business, and loss of the time and energy necessary to amend filings with regulatory bodies and insurance carriers are harms that are readily compensable by monetary damages. *See Little Caesar Enter., Inc., v. Miramar Quick Service Restaurant Corp*., 2019 WL 3997161 at *2 (E.D. Mich. 2019); *Michigan Coalition*, 945 F.2d at 154.

Defendants' reply paints a more dire picture of the economic harm that will befall them if they are forced to comply with the injunction. Defendants compare this case to *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511 (Fed. Cir. 1990), where the Federal Circuit granted a stay when the movant was likely to face employee layoffs, immediate insolvency, and possible extinction if forced to comply with the injunction. Situations like that, Defendants argue, constitute irreparable harm. Defendants assert that compliance would require "significant expenditures," which come in "the COVID-19 downturned business clime and pose a real threat to all three Defendants." But Defendants' only submission of proof in support of its motion—an affidavit from their Senior Director of Transportation Jeffrey Bronson—does not support this dire picture. Mr. Bronson's affidavit lists the various costs associated with compliance, but does not indicate that compliance would cause layoffs or cause the insolvency or the extinction of Defendants. Thus, the Court cannot conclude that Defendants actually face these threats.

Further, Defendant's argument regarding the loss of goodwill and reputational harm associated with rebranding is misplaced. The Court found that Defendants' use of the "Atlas"

marks infringed on Plaintiff's trademark rights. Any goodwill or reputational benefit that Defendants received from their use of the "Atlas" marks is ill-gotten; it was derived from infringing on Plaintiffs' trademarks. Put differently, Defendants ask the Court to recognize an infringer's right to infringe because doing so benefits the infringer. The Court declines to do so.

Finally, Defendants' concerns regarding reputational harm arising from delayed deliveries that could happen if their trucks are forced to be decommissioned for any period of time is not certain and immediate. As of now, Defendants have had two months to begin complying with the Court's injunction. They have more than two months left until their failure to comply will violate the injunction. The Court is confident that, in that time, Defendants can manage their trucking assets in such a way as to comply with the injunction's requirements without inflicting reputational harm by missing deliveries.

Thus, the harms alleged by Defendants are either not irreparable, not substantiated, not cognizable, or not certain and imminent. This factor weighs against staying the injunction.

### III.    Harm to Plaintiffs

Defendants argue that Plaintiffs "will not be harmed if they have to wait for the Sixth Circuit to resolve Defendants' appeal for the Injunction to take effect." The basis for this argument is two-pronged. First, Plaintiffs have known about Defendant's use of "Atlas" marks since 2012 but waited five years to file suit and then did not seek a preliminary injunction during the three years that this case was been pending. Second, Plaintiffs' revenues "are in the billions," and there is no indication that Plaintiffs would lose any business due to Defendants' continued use of the marks.

These arguments misconstrue the relevant harm that Plaintiffs would experience if the injunction is stayed. The Court has determined that Defendants are infringing on Plaintiffs' trademark rights. If this Court stays the injunction indefinitely, Plaintiffs will face a threat of irreparable harm and reputational damage because Defendants will continue to infringe their rights. *Circuit City Stores, Inc., v. CarMax, Inc*., 165 F.3d 1047, 1056 (6th Cir. 1999) ("[I]rreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from [trademark] infringement…") (citing *Wynn Oil Co., v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)); *see also Little Caesar Enter*., 2019 WL 3997161 at *2 ("The likelihood of confusion or potential reputational damage in a trademark infringement case such as this, according to the Sixth Circuit, demonstrates irreparable injury to the trademark owner.") (citing *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) and *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Further, Plaintiffs' decision to not seek a preliminary injunction does not diminish their entitlement to a permanent injunction after the Court's finding of infringement. *See Dish Network, LLC, v. Siddiqi*, 2019 WL 5781945 at *7 (S.D.N.Y. 2019) ("In a trademark infringement case, a party need not first seek a preliminary injunction to demonstrate an entitlement to permanent injunctive relief.") (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 104 n.20 (2nd Cir. 2012)); *see also Mytee Products, Inc. v. Harris Research, Inc.,* 439 Fed. App'x 882, 888 (Fed. Cir. 2011) ("While we have held that delay in seeking an injunction is a factor to be considered in determining whether to issue a preliminary injunction, we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction."); *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577

(Fed.Cir.1996) (noting that a preliminary injunction and a permanent injunction "are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes").

Given the Court's ruling that Defendants are infringing on Plaintiffs' trademark rights, an indefinite stay pending appeal would irreparably harm Plaintiffs. Thus, this factor weighs against staying the injunction.[5]

## IV.    Public Interest

Defendants argue that "[f]rom the public's perspective, there will be no change to the status quo if the Injunction is stayed pending appeal." (ECF No. 170, PageID 5913). The Sixth Circuit, however, has recognized that the public has an interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co., v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). The Court has found that defendants are infringing on Plaintiffs' marks. Thus, this factor weighs against staying the injunction.

## CONCLUSION

For these reasons, the Court **DENIES** Defendants' Emergency Motion to Stay the Permanent Injunction Pending Appeal. (ECF No. 170).

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 21, 2020

---

[5] In an attempt to mitigate the harm that a stay would cause Plaintiffs, Defendants offer to inform their clients and potential clients that they are not affiliated with Plaintiffs. Defendants proposal, however, would not stop their infringing activity. Thus, the threat of irreparable harm and reputational damage would remain, even if Plaintiffs implemented their proposed mitigation plan.